Good morning, Your Honors. May it please the Court, my name is Seth Fralick and I'm here representing Appellant U.H.E. Lee. There are three main points I'd like to discuss with the Court today. First, the record is clear that Mr. Lee's testimony should not have been thrown out as entirely incredible based solely on the immigration judge's decision that two peripheral documents conflicted with Mr. Lee's testimony. With no specific or cogent reason supporting that adverse credibility ruling, the Appellant's non-obfuscated testimony mandates a reversal of the adverse credibility ruling. Why would it peripheral? I mean, there were attempts to demonstrate that he was, in fact, a Christian, as he said they were, and they were both pretty peculiar. They were intended to show his beliefs as a practicing Christian. And that's the basis for his – the entire basis for his asylum application. Respectfully, Your Honor, I would argue that the basis is his perceived beliefs in China. And as the arrest warrant notes, his home country believes – perceives him to be a practicing Christian and wants to arrest him on that behalf. But his position wasn't that they were mistaken. His position was that it was true, and that's why he presented these documents. Well, that's correct, Your Honor. The other issue with those documents is that when the immigration judge questioned him about the purported inconsistencies with them, you know, he offered explanations, but the immigration judge failed to address an immigration – But the explanations were – see, I mean, we have a lot of cases that are concerned about false documents coming from other countries. And they say, well, you know, we can't necessarily know that the person knew they were false documents, right? But here, they were false in their face. They weren't foreign documents. They were from the United States. And they did not show what they purported to show on their face. This is true, Your Honor, but Mr. Lee did not attempt to obfuscate his testimony to comport with those documents. He honestly said, for example, when asked was the church with the baptism certificate came from the church where he was baptized, he did not try to hem around that. He very frankly said no and explained that I went to this church because I was told I needed a baptism certificate, and my church did not give one. So he – So at a minimum, the net result is he has no baptism certificate, and he has no proof that he attended church in the United States. So he has no proof, once you throw out those two documents, that he was in fact – has in fact been practicing as a Christian since he came to the United States. He may not have documentary proof, but he has his testimonial evidence, and that should not have been thrown out based on – simply on these two documents. I have a hard time with that. I can appreciate that, Your Honor. But one document is totally puzzling. I mean, the – he gave an explanation to the other, which he said that his church doesn't give baptismal certificates, so the other church did. I mean, that at least – it makes logical sense. It could be true. The other one – and I just don't understand. Somebody who's trying to deceive the government would not submit that letter. It's a letter that in every respect makes no sense. It's a letter that says he had been attending the church regularly for two years up to 1997, I believe, when he only got here six months before. If he were trying to deceive the government, he would have submitted a letter that was dated 1999 that said he had been attending the – I mean, anyone reading the letter would know that it was incorrect. So why – he had a lawyer, didn't he? He did have an attorney, Your Honor. Well, why would a lawyer submit a letter that, based on his story, was clearly incorrect? I agree with your logic, Your Honor, and I can't speak for that attorney. You know, the record shows that that was not the only issue that attorney had. For example, he filed Mr. Lee's application several months delayed with no – with no explanation on the record as to why that's the case. I agree that that letter on its face probably should not have been submitted. The fact is – It should not have been submitted. I don't understand. It's a letter that almost ensures the defeat of his client's claim. It's clearly a false letter. I mean, everybody, as soon as they saw the letter, would know it's a false letter. Is there any evidence that Mr. Lee saw the letter? There's no – there's no evidence that Mr. Lee saw the letter, and the record does establish that Mr. Lee does not speak English, and so it's quite possible that Mr. Lee had never read the letter or that would have been able to understand the letter. On the other hand, a stranger looking at the letter would know that it was incorrect on its face unless that person knew when he entered the United States. This is correct. But the immigration judge would, the government attorney would, everybody at the hearing would know that it was false the minute they saw it. That's correct, Your Honor. And that's why I would argue that that actually – while it may not make sense that the letter was submitted, it actually supports overturning the adverse credibility ruling, because Mr. Lee, when questioned with the facts in this document, did not try to change his testimony to then match what he was being told the document said. His testimony remained. No one knew that, because I gather that it was accepted and known when he got here, so he could have done that. But the rest of it was equally false, that he went to the English-speaking church, which he says he didn't do, that he went on Sunday, he says, no, I didn't go on Sunday. He, when questioned, denied everything in the letter. Correct, Your Honor. And that's my point, is that he did not try to change his testimony. Earlier, he had given testimony stating he had gone to services that were not in English on Saturdays. And so when confronted with this document, he didn't try to change his story to match the facts that he was now being shown this document claimed. He gave the consistent, internally consistent testimony to his own potential detriment because it didn't match that document. And he said that he was baptized, or he got a certificate from a church that he did not attend saying he was baptized there? His testimony stated that he was informed that he would need a baptism certificate as part of his asylum application. And as his church, where he was baptized, did not issue such certificates, he was recommended to go to this church, which issued him a certificate stating that he had been baptized on the date he was in fact baptized. And he got that certificate after he applied for asylum. I believe that's correct, Your Honor. Let me back up to two other things. First of all, what about the date of the asylum application was denied on the ground and it was untimely? That was one of the purported bases, yes, Your Honor. It was a basis. It wasn't a purported basis. But it was true, and that's another question. Are you contesting that? Absolutely, Your Honor. I believe that the immigration judge wrongly determined when there were changed circumstances that would support the application. He decided that if you were to – well, first he – There's also a lot of confusion about the dates, and maybe you can walk me through that. Absolutely, Your Honor. What date did he actually come to the United States? Mr. Lee came to the United States in August of 1997. Okay. And began going to church then. In June of 1999 is when the arrests in China took place. His parents, several church members and – But isn't the warrant of arrest dated July 15th, 2000? That's correct, Your Honor. So even his parents were arrested? His parents and fellow church members and brothers back in China were arrested then. A year – the summons is undated. So sometime between then and July of 2000, the summons was issued. When he did not make an appearance to court, the Chinese court issued the arrest warrant, which was dated July of 2000. In November of 2000, Mr. Lee signed his immigration – the I-589 form. Apparently, his – his asylum application says that they were arrested this year, and it was dated 2000, but he said it occurred in June 1999. That's correct. So – so we should take it as being June 1999, not June 2000? It was not June 2000. It attested – he was asked that several times on the record and clarified that it was June 2000. I'm sorry. Apologies. June 1999. That wouldn't be a sufficient change of circumstance for him to apply? My position is that that is – that was certainly when he had a subjective fear. He testified that he – at that point, he decided he did not want to return. However, there was nothing from his discussions with his parents to suggest that he was going to be persecuted. All his parents told him was that the authorities wanted to speak with him. And so my position is that you do not have the reasonable fear of persecution. And so they arrested his family and said they wanted to speak to him, and that wouldn't put him on notice that he was in jeopardy there? I would – I think it would subjectively put him on notice, but I would argue that objectively, no, because his parents were released two days later, there was no evidence from that incident that he would necessarily be persecuted. When an arrest warrant is issued a year later, at that point, there clearly is an objective, reasonable fear. You then have a convergence that creates the – Isn't it possible that he's just off by a year and everything? I mean, when he testified when he applied for – when he testified, he said he applied for asylum in February 2000, but in fact, it was a year after that. That's correct, Your Honor. There were translation issues of parents from the record, which the immigration judge, for reasons unknown, sometimes worked to clarify and sometimes did not. And so there are some issues with the dates that are stated in the record. Do you think it's clear, nonetheless, that there was a year between the time that his parents were arrested and when he – and when this arrest warrant issued? I believe that's right, Your Honor. And more importantly, I believe that the July 2000 date, which is – appears on the arrest warrant, that is the pertinent date, because that is when you have your – that is when you have the full set of changed circumstances such that he became eligible for asylum. Well, we have a recent, fairly recent case in which we say that just because you may have reason to file, you don't have to file that until you have a really good case. You don't have to take the risk that someone will say, well, that's not good enough, but that when your case somewhat shortly later becomes a really good case, which, for example, is the warrant for your arrest, then you can file that. That's correct, Your Honor. I think the panel is quite familiar with that case. Well, I wasn't until last night, but others on the panel may have been. And that's – Am I right? That's correct, Your Honor. Yeah, you did. And that – and it was when he had the full changed circumstances and had an established case is when he should have filed his application. And his application was on file six months afterwards, which I would argue is within a reasonable time. So it was within – so he then filed within six months from the time of the warrant. That's correct. So when did he file? His application was signed in November, and his attorney filed it in January. He filed it in January of 2001, and the warrant is dated, what, July of 2000? That's correct, Your Honor. So if you go from the date of the warrant, it's timely. I believe that's correct, Your Honor. If there are no further questions, I see that I'm out of time. All right. We'll give you a minute or so for rebuttal.  Thank you, Your Honor. Thank you. Do you want to start with the asylum issue, timeliness issue, just so we understand ballpark? Okay. Of course. May it please the Court, I'm Katherine Clark on behalf of the Attorney General. To address the timeliness of the asylum application, the immigration judge's decision was not plainly erroneous or inconsistent with the regulation insofar as it held that Lee failed to show that he filed his asylum application within a reasonable time after the alleged changed circumstances. The government would maintain that June 1999 is the appropriate date to consider the circumstances in this case to have changed, precisely because Lee was put on notice of any interest that the government may have had, that the Chinese government may have had. This really does raise a very interesting question. What he had in June 1999 was some indirect report from his parents that somebody was looking for him. Is that basically right? He had no past persecution claim, right? So he needs a very specific reason to believe that he would be persecuted if he were to return. That is correct. And that was the case. And why does he have it in June of 1999? His parents told him that he – that they had been – that they had been arrested and that during this arrest, they were questioned with regard to papers that Lee had allegedly sent to them. And it was at that time that Lee himself conceded that he became fearful of returning to China. And it was at that point that Lee himself in his testimony identified as – But let's suppose that in June – that's true. But had he – and I know there are other credibility problems, but suppose we didn't have the other credibility problems in this case and the board otherwise believed him or the IJ otherwise believed him. If he, however, in June 1999 would have had a – it would have been a vague and indistinct basis, uncorroborated by anything, for why he thought he was going to be persecuted. But a year later, he could actually prove it up. Is the government's position that that would not, in fact, be such a vague and indistinct basis? Well, why? You know, this is a habit that lawyers for your office have all the time is our position. And it's not helpful to know. I know what your position is. I want to know why. The claim was not vague at that point because he – You know, do you think that your position would have been if he had filed then, you would have said, oh, yes, clearly he's got a good case. He doesn't have any papers. He doesn't have any witnesses. But he says his mother told him that. So we agree that's certainly a good reason for him to be fearful. And he's got a subject of an objective basis for that well-founded fear. We can count on that? Lee himself identified that in his testimony. Well, you know, Lee himself is not the United States government. You're so happy to tell us it is the government's position. And I'm asking you what the government's position would have been, not what Lee would have thought. But can we be assured that you would have said that's a good reason for well-founded fear? I can't speculate as to whether that would have granted him. Well, but he may speculate, and that doesn't mean much either. I mean, we have an opinion that says that you can wait. Until you have a really clear reason. And in this case, the reason, as a preliminary, the evidence that Lee purports to introduce to establish a clear reason, we wouldn't concede that that's a clear reason. Well, let's look at what he testified to. He knew that his mother was arrested, right, and mistreated also. Did he know that? He heard from his mother that that was the case. Okay. And proceeded then to learn that that persecution was for religious reasons. Is that right? For his testimony. And that the materials that he sent had a great deal to do with it, right? For his testimony, yes. So he indicated, actually, that he formulated a fear at that time when his parents were arrested. But didn't he say that he didn't file then because he didn't have knowledge of American law rather than any other reason for failure to file? That is correct. He did say that that was the reason that he did not file at that time. And that is not a significant – that is not an adequate reason for untimely filing under this Court's law in Husio. But that assumes that he had an obligation to file that. What he thought doesn't really matter much if he didn't have any obligation to file. So the question is the application of Judge Berzon's opinion in the factory, whether these facts fall within the factory or not. Whether he thinks he has a reason to file or he thinks he shouldn't file has to do with subjective fear. But the question is, did he have an objective case at that time that the government would have recognized? And he said he can't speculate on that. And the question in this case is whether the immigration judge's decision was plainly erroneous or inconsistent with the regulation. Well, it's a legal question. Certainly the immigration judge didn't read factory since it's a 2008 case. And even under factory, the immigration judge's decision would not have been plainly erroneous or inconsistent with the regulation. The immigration judge's decision was not plainly erroneous. The deference is owed there to the immigration judge. Whether he had an objective fear or not has nothing to do with whether the government would feel that he's being persecuted. Is that right? The government's position doesn't matter. It's his objective fear that counts. And Petitioner may have had a slightly stronger basis for showing an objective fear if indeed the arrest warrant and the summons were authentic, and if indeed he obtained those in July of 2000 as per the date on those documents. But there's no specific holding in factory as to when exactly a claim becomes objective. And did he say, in fact, that he went to somebody to file around that time also, but he had a problem with something at that time his parents were apprehended? That is correct. He had certain problems related to filing, related to counsel, related to or per his allegations that apparently delayed his filing. You know, it's very interesting that every time you talk about what he said, you always say, well, per his allegations or per his testimony, which means that you're not really accepting all of that as correct just because he says it. Because the agency determined that he was not credible in this case, and that determination is supported by substantial evidence. And his adverse credibility finding undermines the honesty of his entire claim. Let me ask you something. In the end, this is not a past persecution case. The – I mean, nobody's ever decided, as I understand it, whether if he were credible, he would be entitled to have a well-founded fear found. Is that right? In these particular very fact-specific circumstances. Well, in this case. That has not been decided. I don't – I'm not sure I fully understand the Court's question. Well, all I'm saying is, you know, it just slightly strikes me that we're kind of spinning wheels, because in the end, what he has to show that he had a well-founded fear is this warrant that says they wanted to talk to him. What does the warrant say? I'm sorry? What does the warrant say? As to well-founded fear? Yes. The Board rested its – the Board, after affirming the immigration judge's decision, Right. the Board's additional – pursuant to matter of bravado – the Board's additional comments rested on the – and its affirmance of the immigration judge's denial rested on the adverse credibility finding. Well, the question is, what does the warrant say? The warrant says, in answer to this case. Oh, the warrant. I'm sorry. That he has colluded with foreign anti-Chinese organizations, spread anti-party reactionary remarks and information, betrayed the motherland, jeopardized state security. Yes, ma'am. And there was going to be a hearing on his involvement in illegal religious organizations. And that is – that is what the warrant – or the document that purports to be the warrant says. And that I – Why do you say purports to be the warrant? Do you reject the authenticity of that? The adverse credibility finding with regard to the conflicts between the baptismal certificate and the – and the church letter call the honesty of the entire claim into question. And therefore, the agency did not accept any of the claim as a credible claim. And it is – I apologize. I was addressing the Board's decision previously because I thought that that is what the Court was asking. That's why my answer was not responsive before. Okay. And the inconsistencies did undermine the entire claim. They – they undermined the claim and they were not adequately explained. The agency was not compelled to accept Lee's explanation that he obtained the baptismal certificate from a friend. And in addition, Lee's explanation there provided further evidence of fraud because the certificate was dated in 1997. It purported to have been awarded in 1997. And indeed, Petitioner justified that the certificate was awarded in 2001. These inconsistencies with regard to these documents indicated overall dishonesty and not just with respect to the documents themselves. Lee's testimony need not be presumed credible, as his counsel suggests, simply because it did not strengthen his asylum claim, but in fact weakened the claim because it called his documents into question. The IJ permissibly used common sense in concluding that inconsistent testimony – testimony that was inconsistent with the documentary evidence offered would have rendered Lee incredible. Finally – It is awfully odd, though, because he testified he went to a certain church in Arcadia. He's very specific about that. He had this document from another church. If he was really going to lie, he would have used the church that he – he would have said he went to the church that the document was from, especially because he said he lived there now. But he didn't do that. It's a really peculiar business. But he offers – the burden is on him to establish credible evidence of his eligibility. And he – But he offered a document, and he said, I didn't go to this church. This is the church that issued the document. My church didn't. And they tell me to go to another church which would issue the document. And his dishonesty, however, went beyond offering the document and to saying the document says that it was issued in 1997, and he said that he obtained it in 2001. He failed to explain that altogether. And the document – he simply failed to explain any of the issues that arose that rendered him incredible, and even though he was offered specific opportunities to explain. And the letter from his pastor, as the Court has addressed, is inconsistent and entirely unbelievable. And indeed, there is evidence that Lee saw this letter. On the administrative record, page 92, he says he was familiar with it. Also on page – It's in English. It was in English. Yes. However, Lee himself testified upon being asked in the merits hearing with a translator that he was familiar with the document. He does not explain how he was familiar with it, but he does say he was. I don't know if he was familiar with the document. He knew that somebody had gotten a document that said that he had been baptized, another document that said that he had gone to a church. That's being familiar with the document. No one asked him, did you read this? Who read it to you? The other thing is that it makes so little sense to introduce a document that can only get you in trouble. Nobody who read that document would have introduced it, including his lawyer. I mean, we get very bad lawyers in immigration cases regularly. But, you know, I can't – you've got to be even worse than those lawyers to introduce this document. But the burden would have been on Lee, just the same, to explain any reason for introducing an inconsistent document. And he was offering the opportunity. Well, if he knew what it said. Pardon? I said if he knew what it said, if his lawyer had read it to him. They didn't read it to him at the hearing and say, how are you explaining this? There's no evidence, however, that the document was not read to Lee. And, again, it is Lee's burden to offer an explanation. If he had wanted to say whether the document was read to him or not, he could have done so when he was offered the opportunity to explain. Was he even told at the hearing what it actually said? Again, I'm not sure I understand the – I said at the hearing, I don't recall. Yes. Was he even told then what the document actually said? Did somebody say to him, it says you've been going to church for two years prior to 1997? The questioning regarding that letter begins on page 92. It says, sir, I'm looking at Exhibit 2, a letter you attached from the Alhambra True Life Presbyterian Church dated October 6th of 1997. Are you familiar with that? I'm sorry, what page? Oh, page 92 of the record. He responds, yes, I maybe went there because I went to many churches. Earlier when I questioned you, maybe one question before that, you indicated that you did not go to a Presbyterian church in 1997. Are you changing your testimony now? I've been telling you that I attended many churches. And then the next question is, sir, I'm looking at this letter from the Alhambra True Life Presbyterian Church, which indicates, quote, this letter is to testify that Mr. Lee Uyp has been coming to our church to worship on Sundays for almost every Sunday, end parentheses, for more than two years. Could you explain that? So the crucial portion of the letter was, in fact, read to Lee at the hearing. Then Lee responds, are you referring to the one in Alhambra? Yes, I should have gone there. Someday I did go. And so Lee's explanation is simply non-responsive. And he was offered an opportunity at the hearing to learn the crucial contents of the letter and to explain those. And he failed to do so in any way that could have rendered him credible or that any reasonable fact finder would be compelled to complete. I thought you said page 97. That's page 92 through 93. All right. And finally, the conflicts between Lee's testimony and documentary evidence undermine his claims that he is a Christian who went to church where he could obtain the documents that he alleged that he sent back to his parents. Therefore, in accordance with the court's requirements in Cheb Shub v. INS, the inconsistencies relate to the heart of Mr. Lee's claim. They relate to the basis for his alleged fear of persecution. Therefore, they undermine his overall honesty, and they provide substantial evidence for the immigration judge's adverse credibility finding. Lee failed to establish that he filed for asylum within a reasonable period after his allegedly changed circumstances, and the respondent therefore asks that the court deny the petition for review. Thank you. Thank you. Your Honors, government for the – counsel for the government makes the same mistake that the immigration judge makes in that they were both unwilling to make any distinction between a subjective fear and an objective fear, and simply assume that when Mr. Lee states that in July – in the summer of 1999, he was personally afraid to return to China, that that meets the requirements of changed circumstances. The case law is clear, as recent as the FACRI decision, that there has to be a separate, reasonable, objective fear. Why wasn't that – wasn't that an objective fear? Why – why didn't he have an objective fear? When an ordinary person, a reasonable person, say, well, my parents have been arrested. My mother's mistreated. It all revolves around the church and materials I sent them. I've got a fear of persecution. Isn't that reasonable? I would argue no, simply because his mother told him, we were arrested. We were beaten. The police would like to speak to you, but there was no statement of the police are going to arrest you and that they're going to come after you. And so it's not clear that that – You mean it's not a logical step to say they did this to my family, they're going to do it to me? It may be, Your Honor. However, as – as this panel has pointed out earlier, you – that doesn't necessarily mean that the application would have had to have been filed then. There was a newly created reasonable fear. If – if one were to concede a reasonable fear then – No. Frankly, my whole reading of this whole thing is that he's just off for a year on everything. Because when he talked about – he distinctly said in his original application, he stated 11-15-00, and he says something unfortunate happened in June this year. The Chinese police detected the underground church. That's dated – June this year was June 2000. Then when he testifies, he said, when did you apply for asylum? He says, around February 2000. Well, first of all, that doesn't make any sense because he wouldn't have even – none of this stuff happened before that. And then he's – and obviously it wasn't then. It was February 2001, right? It was actually January 2001. That's correct, Your Honor. So just in general, he was just off for a year about everything that he testified. It's not clear, Your Honor. And the problem is that there were clearly translation issues during the hearing which were not addressed. Well, that ends up actually being helpful because it means – to you, because it means that he was actually got this warrant about a month after his parents were arrested, not a year, which makes a lot more sense, first of all. And second of all, it means that he got it – that there isn't a year gap between the time that his parents were arrested and the time he got this warrant. Absolutely, Your Honor. If his parents were, in fact, arrested in June of 2000, I suppose. I said earlier, but I don't know what the I.G. I guess the I.G. thought it was 99, right? But it doesn't count for these other things. That's correct. The I.G. did assume it was 99. However, unfortunately, the immigration judge made a variety of assumptions and conjecture rather than offering specific cogent reasons, which is the problem that brings us here today. And that's what rests at the heart of this case is the fact that the case law is very clear that immigration judges need to support their adverse credibility rulings with explicit cogent reasons laying out each problem that they find and how that as a whole warrants throwing out the entirety of testimony. There's been an endemic problem in the system of immigration judges attempting to bulletproof their decisions by simply saying, I deem everything to be lacking in credibility, and so application denied. I can then simply wash their hands of it. And the record does not support that. And this case is a prime example of that. And on that basis, I would urge this Court to reverse the ruling. Thank you, counsel. The case is arguably submitted. I called the office. She was in. The secretary was in. I spoke to the receptionist. The receptionist said that she believed she was on vacation in Mexico. But I did receive the acknowledgement of hearing those steps that she was going to be here. Well, that's the advanced part of the Court. Well, I don't think the government's here. I don't know what the basis of that is.
judges: Reinhardt, Miner, Berzon